374

BROCKMAN, by guardian *ad litem*, Appellant, vs. WISCONSIN POWER & LIGHT COMPANY, Respondent.

*November 8—December 4, 1928.*

For the appellant there was a brief by *Bassuener & Humke*

of Sheboygan, attorneys, and *Eberlein & Larson* of Shawano, of counsel, and oral argument by *M. G. Eberlein.*

For the respondent there was a brief by *Bowler & Bowler* of Sheboygan, attorneys, and *T. L. Doyle* of Fond du Lac, of counsel, and oral argument by *Mr. Doyle.*

The following opinion was filed December 4, 1928:

ROSENBERRY, J. The facts necessary to a determination of the questions raised here may be stated briefly as follows: Union avenue in the city of 'Sheboygan runs east and west and is intersected by South Fourteenth street; one-half block east of Fourteenth street is an alley dividing the block into two parts. On the northeasterly corner of the west half of the block is a shed, and near this a garage. On the day in question it is claimed by the plaintiff that he rode a bicycle guided by his playmate, Jesse Berger, a boy thirteen years of age. The plaintiff sat on the handle-bars facing to the left of the bicycle. It is claimed that they proceeded south down the alley from the garage, turned to their right to the west, proceeded along Union avenue to a point opposite the Miller home, which is the second house east of Fourteenth street and the third house west from the alley, where the accident occurred. The plaintiff suffered very severe injuries. On the part of the defendant it was claimed that the boys came from near a driveway on the west side of the Miller house out into the street; that the Berger boy attempted to turn the bicycle one way and the plaintiff tried to turn it the other way, and as a result of these efforts the bicycle ran into the bus, plaintiff was precipitated under the wheels of the bus and sustained the injuries complained of. The jury found as to the place of entry of the boys upon Union avenue in accordance with the contention of the defendant, found that the driver of the bus did not fail to keep a proper lookout and that he was not driving at an excessive rate of speed, and acquitted both boys of contributory negligence.

The case is argued here on behalf of the appellant as if a decision of the controversy as to whether the boys came down the alley and turned to the west on Union avenue, or whether they came out of the driveway on the westerly side of the Miller home, is determinative of the issues in the case. The error principally complained of, which will be noticed later, is claimed to be prejudicial and it relates to that issue.

At the time of the accident there was standing in front of the Miller home a car occupied by one Arnold Eichstadt, a salesman thirty-six years of age, and his wife. Their car was on the northerly side of Union avenue, facing to the east, being on the wrong side of the street considering the way the car was faced. They were engaged in conversation with Mrs. Miller. It is undisputed that the bus drove down the center of Union avenue with its left wheels at or slightly to the left or south of the center of the paved portion of the street; that the boys passed very close to the Eichstadt car, and on this theory of the case there is no direct evidence to show how the boys and the bicycle came into contact with the bus. There is no evidence which tends to show that the bus driver turned to his right or to the north toward the curb; such evidence as there is tends to prove that the accident happened immediately behind the Eichstadt car and that the bus driver at or very shortly before the contact turned to his left or to the south. It is undisputed that the point of contact of the bicycle and bus was somewhere between the front and the rear wheels on the right-hand side of the bus. We have searched the record very carefully but in vain for any evidence which would sustain a finding by the jury that the driver was guilty of any negligence whether the boys came out of the alley as claimed by the plaintiff or came down the driveway as claimed by the defendant. Nor is there any evidence in the case which would sustain a finding that any conduct of the driver of the bus was the proximate cause of

plaintiff's injury. Defendant's motion to direct a verdict should have been granted.

While it is not strictly necessary to a disposition of the case, we shall take up and discuss the principal question raised on behalf of the plaintiff. To sustain his case the plaintiff offered the testimony of Jesse Berger, his own testimony, that of Mr. Eichstadt, Mrs. Miller, the testimony of Brooks Maxfield, the driver of the bus, examined as an adverse witness, who testified as to the manner in which the accident happened so far as he observed the same. None of the witnesses testifying on behalf of the plaintiff were able to state how the boys and bicycle came into contact with the bus except the two boys, and they gave a hazy, indefinite, and entirely unsatisfactory account of the collision. These witnesses except Maxfield sustained the contention of the plaintiff that he and his playmate came down the alley and turned onto Union avenue, traveling westerly on the right or northerly side of the street. At the close of plaintiff's testimony the defendant offered the evidence of the driver of the bus, the testimony of certain persons to whom it is claimed admissions were made by the plaintiff and the Berger boy, and the testimony of Mrs. Alice Reichert, who was a passenger sitting on the right-hand or northerly side of the bus at the time of the accident. Her testimony was as follows:

"I saw the two boys come out of the driveway, going southeast direction, and they were about four or five feet from the bus, and the bus driver he tried to avoid the accident and he turned to the left and the bicycle hit against the bus on the side of the bus, and then I don't know whether the boy fell off or got scared and jumped off."

Brooks Maxfield, the driver of the bus, testified:

"The boys on the bicycle were eight or ten feet from me when I first saw them. There was nothing between me and the boys. The boys were driving their bicycle southeasterly

when I first saw them. It was west of the automobile. The boys did not pass the automobile east of the automobile parked in front of the Miller place."

Recalled on direct examination Maxfield further testified:

"When I first saw the boys they were coming out behind that car there, probably behind part of the rear wheel. As the boys came out further on the bicycle, came out into the street further, they took a southeasterly direction. When I saw them they were coming out south, and then they headed the bicycle easterly direction. The front end of the bicycle came in contact with the bus."

To rebut the defendant's testimony the plaintiff produced one Alma Zastrow, a married woman, who was standing on the northeasterly corner of the intersection of Union avenue and Fourteenth street, that is, the width of one lot west of the driveway on the westerly side of the Miller home. The plaintiff's counsel asked this witness the following question: "Now, then, did you see the two little boys and the bicycle that afternoon at that time?" This was objected to as not proper rebuttal. Counsel for the plaintiff stated:

"We expect to prove by this witness that she was present, she walked down from the east to the west on the north side of Union street [avenue] from the alley to the northeast corner of Union and Fourteenth and that she did not meet the boys on the sidewalk, they did not pass her, but that she saw them east of the Miller house."

On motion the court struck out the answer of the witness and said: "The only question is whether the court should receive it or not. The issues were made plain on the opening statement of counsel what each side claimed as to where the boys came from."

Plaintiff's counsel then asked leave of the court to put in the testimony of this witness as a part of the plaintiff's case. The court then inquired why the witness was not produced on the plaintiff's case in chief. Plaintiff's counsel responded because he thought it was rebuttal and still thought so. It

appears that plaintiff's counsel knew of the witness, knew what she was expected to testify to, and that they had intentionally withheld her from the stand until the close of defendant's case. Counsel for plaintiff then argued the proposition that the facts which he sought to prove by Mrs. Zastrow were in rebuttal. The court ruled as follows:

"It often happens that in the trial of a lawsuit that some new theory has been advanced by a defendant and it becomes very proper to negative that theory, and if it is on that ground that counsel is offering this evidence, and in many cases it would be entirely proper to offer that evidence on rebuttal to negative the new theory. But the issue in that respect was very well defined at the beginning of the trial, and I asked counsel, after the opening statements were made, for their respective claims in that respect. And the issue was well defined where the boys came from. The last two days we have been trying that question; it was one of the most contested, disputed propositions in the case. Considerable evidence taken on other matters, some of which were not disputed materially, for instance where the bus was, where it was traveling, where it left the marks on the road. But this question from the beginning of the case to the end has been a disputed question. Now counsel for the plaintiff is offering a new witness in rebuttal and say that they expected the other side to call the witness. Neither side called the witness up to the present time. Now, it seems to me it would be violating the usual rule of trials and procedure to open up the case again and call a new witness on that subject, which, from what is claimed, would be evidence tending to support the plaintiff's claim. Under the circumstances, I think the usual rule should apply that rebuttal should be confined to rebuttal evidence. I very often open up a case and let in new evidence, but I think this isn't a case of such kind."

The plaintiff excepted to the ruling of the court and argued here very vigorously that the trial court was in error. We have set out the facts rather fully so that the situation may be fairly presented. No witness sworn on behalf of the defendant testified that the boys were on the sidewalk. The

most that can be said for the defendant's witnesses is that they testified the boys were on or near the Miller driveway in the rear of the Eichstadt automobile. No doubt the court would have been justified in permitting the plaintiff to open up his case and admit the testimony of Mrs. Zastrow, but whether or not that should be done rested in the sound discretion of the trial court.

The reasons for the rule are stated by Mr. Wigmore:

"Practical disadvantages that would result from abandoning the natural order of evidence are, first, the possible unfairness to an opponent who has justly supposed that the case in chief was the entire case which he had to meet, and secondly, the interminable confusion that would be created by an unending alternation of successive fragments of each case which could have been put in at once in the beginning.

"Accordingly, it is well settled that, while the occasional difficulty of discrimination, and the frequency of inadvertent omissions and unexpected contests, and emphasis to the general principle of the trial court's discretion, yet the usual rule will exclude all evidence which has not been made necessary by the opponent's case in reply." 4 Wigmore, Evidence, p. 20, § 1873, cases cited and commented upon.

It was held in *Stanhilber v. Graves,* 97 Wis. 515, 73 N. W. 48:

"Where evidence which is competent on examination in chief, and is not properly rebutting testimony, is offered by the plaintiff after the defendant has closed his evidence, it is admissible only in the discretion of the court, and its exclusion is not error."

In *McGowan v. C. & N. W. R. Co.* 91 Wis. 147, 64 N. W. 891, the court said:

"The plaintiff or party holding the affirmative must try his case out when he commences and is bound to introduce all the evidence on his side, except that which operates merely to answer, avoid, or qualify the case as made out by his adversary's proof. At this alone the evidence in reply must be directed, but for sufficient reasons it may be found

advisable to depart from the rule in order to attain complete justice. When this ought to be done must be left to the sound discretion of the court, and in general its action in this respect cannot be assigned as error."

The testimony of Mrs. Zastrow tended to prove that the boys came from the alley along Union avenue in a westerly direction to the point of the accident. This was the main contention of the plaintiff, and it was the plaintiff's duty to produce as a part of his case in chief such evidence as he had which sustained that contention. The mere fact that the testimony of Mrs. Zastrow tended to contradict the defendant's witnesses did not make it evidence in rebuttal. Plaintiff's entire case upon this point tended to contradict the defendant's testimony. Mrs. Zastrow's testimony no more contradicted it than did the testimony of Mrs. Miller or Mr. Eichstadt and hence was a part of plaintiff's case in chief. It cannot be said in this case that the trial court abused its discretion in refusing to permit plaintiff to reopen his case.

We have called attention to this matter because of a loose practice which is prevalent of permitting parties to call and recall witnesses out of their proper order without limit, having no regard to an orderly conduct of the trial. A wise exercise of the discretion vested in trial courts in this respect would not only produce more orderly trials, but would distinctly aid in the administration and attainment of justice. Trials ought not to be a hit-and-miss affair run by guess, without regard to orderly procedure.

We do not find it necessary to discuss other questions raised in briefs of counsel.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, with $25 costs, on February 5, 1929.