HORICON STATE BANK, Plaintiff-Appellant,

v.

KANT LUMBER COMPANY, INC., Thomas C. Kant, and Sharon Z. Kant, Defendants-Respondents.

Court of Appeals

*No. 90–1949. Submitted on briefs April 4, 1991.—Decided November 7, 1991.*

(Also reported in 478 N.W.2d 26.)

For the plaintiff-appellant the cause was submitted on the briefs of *Lisa L. Derr* of *Boyle, Steffes & Schwefel* of Beaver Dam.

For the defendants-respondents the cause was submitted on the briefs of *Joseph G. Sciascia* of *Sciascia Law Office* of Juneau.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. Horicon State Bank appeals from a $48,896.66 deficiency judgment against one of its mortgagors, Kant Lumber Company, Inc., and the mortgage note guarantors, Thomas and Sharon Kant. The bank bought the mortgaged property at a sheriff's sale. The bank contends that the trial court should have vacated the sale. The property is contaminated with petroleum, and the clean-up costs may exceed the property's value.

The bank argues (1) it and the defendants were mutually mistaken regarding the condition of the property, (2) the sale should be set aside even if only the bank was mistaken, (3) the bank is not charged with the knowledge of its appraiser regarding the condition of the property, (4) the bank's failure to obtain an environmental evaluation before the sheriff's sale was not negligence, (5) it is inequitable to impose the clean-up costs on the bank rather than on the defendants, (6) the court confirmed the sale without evidence as to the fair value of the property,[1] and (7) the bank's post-judgment legal expenses should be added to the judgment. We find merit only in the last contention. We remand to add costs and attorney's fees (except those connected with the bank's efforts to vacate the sale) to the judgment, and otherwise affirm.

---

[1] Section 846.165(2), Stats., provides that the sale cannot be confirmed and a deficiency judgment rendered unless "the court is satisfied that the fair value of the premises sold has been credited on the mortgage debt, interest and costs."

The trial court found that when the foreclosure judgment was entered on April 7, 1989, the bank knew or should have known that it might have to bid at the sheriff's sale. Before the sale, the bank's appraiser advised it that the property was worth $6,000. The sale was held on June 13, 1989, and the bank was the only bidder. It bid $10,000 to be sure the sale would withstand scrutiny at the confirmation hearing.

Although the appraiser testified he had not seen evidence of underground or above-ground oil storage tanks on the property, the trial court found his testimony incredible. The appraiser had taken photographs, one of which showed a black oil waste collection drum. When visually surveying the property, the environmental evaluator's agents saw the waste oil collection drum and a fuel dispenser, vent pipe and fill pipe, and the court found that all were readily apparent to the appraiser. As the court put it: "The fuel pump, the fill pipe and vent pipe were all there for [the appraiser] to see when he viewed the lots and took the pictures." The court concluded that the appraiser was the bank's agent and that his knowledge was imputed to the bank.

The court found that after the sale the bank had the property evaluated for pollution. It is undisputed that the bank sought the evaluation because it had a prospect for the property who wanted assurance that no environmental problem existed. The evaluator testified that the clean-up costs will be $5,000 to $13,500, and perhaps more. The court found that the bank should have had the evaluation made before the sale.

We reject the bank's contention that its bid was based on its mistake. We need not decide whether the appraiser was the bank's agent and his knowledge was imputed to the bank. The purchaser of land is chargeable

with knowledge of the rights of third parties which the purchaser could discover through examining the land. *Bump v. Dahl,* 26 Wis. 2d 607, 615, 133 N.W.2d 295, 300, *reh'g denied,* 26 Wis. 2d 616a, 134 N.W.2d 665 (1965). The *Bump* court stated:

> Under the doctrine, the purchaser is charged with notice of all of the rights of the possessor and of all the facts connected therewith which a reasonable inquiry of the one in possession would disclose. The apt language of *Frame v. Frame* (1899), 32 W. Va. 463, 478, 9 S.E. 901, 5 L.R.A. 323, to the effect the earth is a "universal manuscript, open to the eyes of all" and therefore when "a man proposes to buy or deal with realty, his first duty is to read [the] public manuscript," has been quoted with approval in *Pippin v. Richards* (1911), 146 Wis. 69, 130 N.W. 872, and in *Miller v. Green,* [264 Wis. 159, 58 N.W.2d 704 (1953)].

*Bump,* 26 Wis. 2d at 615, 133 N.W.2d at 300.

A purchaser must read that "universal manuscript, open to the eyes of all," to determine the condition of the land itself, as well as evidence of the rights of third parties. Had the bank examined the property before the sheriff's sale, it would have seen what its environmental evaluator saw and what its appraiser ought to have seen. Had it done so, the risk of pollution would have been apparent. The bank cannot now claim that when it bid at the sale it was mistaken about the property's condition.[2]

___

[2]See also *Hughes v. Cloud,* 504 So.2d 734, 735 (Ala. 1987) (house purchasers asserting size not as represented could have easily discovered the actual size of the house by inspection); *In re Pettyjohn's Estate,* 57 A.2d 757, 758 (Del. Orphans' Ct. 1948) (after judicial sale, court rejected argument of purchaser who

■

The trial court had evidence at the confirmation hearing regarding the fair value of the property. That evidence was the $6,000 appraisal. That the bank chose to bid $10,000 is irrelevant. The mortgagee who bids more than the appraised value to support an order confirming sale under sec. 846.165(2), Stats., as a predicate for a deficiency judgment, should not be heard to claim that the property was not sold for its "fair value."

It is irrelevant that after the sale the bank learned that the clean-up costs may exceed the appraised value of the property. Had it examined the property before the sheriff's sale, the bank would have obtained information which would have affected its bid. It cannot complain now that it failed to read the "universal manuscript, open to the eyes of all," and therefore did not draw the appropriate inferences.

■

A sale can be set aside if it is inequitable to let it stand. *Family Sav. & Loan Ass'n v. Barkwood Landscaping Co.,* 93 Wis. 2d 190, 202, 286 N.W.2d 581, 587 (1980). No reason exists for us to help the bank. Had the bank obtained an environmental evaluation before the sale, it would have learned that the property has little or no value. The bank itself could have left the clean-up costs with the mortgagor and perhaps the guarantors. It chose to overbid. We will not intervene if an overbid at a sheriff's sale results from the bidder's ignorance. *See Wilson v. Craite,* 60 Wis. 2d 350, 355, 210 N.W.2d 700,

opposed confirmation on grounds of a misleading advertisement because a "most casual investigation on his part would have revealed the condition of the premises"); *Woelfel v. Tyng,* 158 A.2d 311, 313 (Md. 1960) (after judicial sale, purchaser who discovered no right of way existed denied relief for lack of diligence).

703 (1973) (purchaser at execution sale bound by overbid based on unilateral mistake).

The original judgment directed the sheriff to pay the bank its costs, disbursements, and attorney's fees. At the confirmation hearing, the bank requested that its costs and legal expenses be added to the judgment. The trial court refused and the bank argues that this was error. We agree.

The defendants argue that sec. 846.10(4), Stats., allows the court only to add to the foreclosure judgment insurance, necessary repairs and taxes. Section 846.10(4) provides:

> The court may order in the judgment of foreclosure that all sums advanced by the plaintiff for insurance, necessary repairs and taxes not included in the judgment may be added to the judgment by order at any time after the entry thereof.

We reject defendants' contentions. Section 846.10(4), Stats., affirmatively authorizes the court to add certain expenses connected with foreclosure proceedings to the foreclosure judgment. It does not deny to the court the power to add other expenses connected with the foreclosure which the mortgagors have expressly agreed to pay. The mortgage provides: "To the extent not prohibited by law, Mortgagor shall pay all reasonable costs and expenses, including without limitation, attorneys' fees and expenses of obtaining title evidence, incurred by Lender in foreclosing this Mortgage."

On remand, the court is directed to determine the bank's post-judgment attorney's fees and costs (other than fees and costs in connection with the bank's unsuccessful efforts to vacate the foreclosure sale) and to add those items to the foreclosure judgment.

549

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.